Sheldon I. Cohen, Arlington, Va., for petitioner.

Carolyn E. Galbreath, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Also on the brief were James M. Strock, Deputy Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel, and Murray M. Meeker, Atty., of the Office of the Gen. Counsel, Office of Personnel Management, Washington, D.C.

Before MARKEY, Chief Judge, and FRIEDMAN and MICHEL, Circuit Judges.

**Bruce D. LITTLE, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 88–3188.**

United States Court of Appeals, Federal Circuit.

Nov. 2, 1988.

FRIEDMAN, Circuit Judge.

The issue in this case is whether the Merit Systems Protection Board (Board) correctly affirmed the reconsideration decision of the Office of Personnel Management (OPM) that the petitioner's disability had not recurred. The answer depends upon whether, as the Board and OPM held, a "recurrence" of disability under the governing statute requires that the employee's medical condition shall have worsened since his prior disability terminated. We hold that such worsening must be shown, and we therefore affirm.

I

In 1976, the petitioner, Mr. Little, broke his back while on duty as an FBI agent. In 1979, Mr. Little was granted a disability annuity because of his injury. In 1980, based on a statement from his orthopedist and an independent examination by a government physician in October 1980 that he no longer was disabled, the FBI notified Mr. Little that he could return to work and that his new assignment would be in the Los Angeles Office of the Bureau. There his work would have been more strenuous than it had been in Mississippi, where he previously had been assigned and apparently had performed mainly desk work. Mr. Little rejected the reassignment.

In March 1984, OPM notified Mr. Little that based on the October 1980 examination, his disability annuity was being terminated retroactive to October 15, 1981.

In 1986, Mr. Little applied to OPM for reinstatement of his disability annuity. He submitted a new statement from his orthopedist that he was disabled. The orthopedist stated that Mr. Little was "unable to carry out sustained, strenuous physical activity, prolonged sitting or standing particularly in cramped situations and even momentary periods of extreme physical stress," and that "the limitation described would preclude his participation in investigative work as an F.B.I. agent since this requires an ability to do strenuous work and participate in arrests, raids and other activities involving use of tactics of self defense." The orthopedist further stated

that Mr. Little's "physical findings are unchanged over previous reports...." OPM denied reinstatement.

In a subsequent statement which Mr. Little submitted in connection with his request for reconsideration of OPM's initial decision that his disability had not recurred, the orthopedist stated that "[t]he opinion in my report dated August 25, 1980 was based on the patient's comments in reference to the job that he was doing at that particular time. It was not based on the specific requirement as spelled out in the documents" subsequently provided for the orthopedist that described in detail the duties of the FBI agent position Mr. Little had held:

The only reason for the difference in the opinion in the reports of August 1980 and the current reports is the difference of the availability of specific information. Mr. Little did not meet the requirements as outlined in the official job descriptions in 1980. He does not meet them now and he will never meet them.

It seems to me that Mr. Little erred in minimizing his symptoms in an attempt to return to his job with the FBI, that I erred in not having a specific job description made available and that the FBI erred in not comparing the ultimate functional impairment rating with the job description before letting Mr. Little resume his duties. It further seems to me that none of the above changes the basic fact that the man was injured in the line of duty. He does have a severe compression fracture of the second lumbar vertebra with associated post-traumatic changes. These changes are permanent and they do disqualify him from meeting the standards outlined in the documents provided. It does not appear to me, based on these documents, that he would be able to perform the requirements of his position in an acceptable level of competence.

Mr. Little had applied for reinstatement of his disability annuity pursuant to 5 U.S. C. § 8337(e) (1980), which provides:

If an annuitant whose annuity is heretofore or hereafter terminated because of a

medical finding that he has recovered from disability is not reemployed in a position in which he is subject to this subchapter, his annuity shall be restored at the same rate effective from the date of medical examination showing a recurrence of the disability.

OPM denied reconsideration of the disability annuity, and the Board affirmed. OPM held that there had not been a "recurrence of the disability" under section 8337(e) because Mr. Little had not shown that his medical condition had worsened following the 1980 determination that his disability had ended. In affirming, the Board accepted OPM's interpretation of the statutory term "recurrence of the disability" as requiring a worsening of an employee's medical condition following a determination that disability had ceased, as "not clearly erroneous or inconsistent with the act or the implementing regulation." The Board found that Mr. Little "has not shown that his condition has significantly changed since he was found recovered."

## II

■ A. The government contends that under *Lindahl v. OPM*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), we have no jurisdiction over this case. Although *Lindahl* held that "the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether 'there has been ... a misconstruction of the governing legislation[.]'" 470 U.S. at 791, 105 S.Ct. at 1633 (quoting *Scroggins v. United States*, 397 F.2d 295, 297, 184 Ct.Cl. 530, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)).

Here Mr. Little, in contending that the Board improperly interpreted the statutory term "recurrence of the disability," asserts that there has been "a misconstruction of the governing legislation." Although we reject Mr. Little's argument, we cannot say that it is frivolous or so insubstantial as to preclude us from considering it.

■ B. Mr. Little argues that there is a "recurrence of the disability" whenever there is any change in either the employee's medical condition or in the nature of the work that the employee is required to perform. He contends that the concept of "disability" has two elements—the employee's medical condition and the work he is to perform—and that a disability recurs even though the employee's medical condition is unchanged if the work is more arduous than it was when his prior disability was found to have terminated.

We agree with OPM, however, that for there to be a recurrence of the disability, the employee's medical condition must have deteriorated. Section 8337(e) covers a formerly disabled employee who has been found medically to have "recovered from disability" but subsequently has had a "medical examination showing a recurrence of the disability." On its face, the statute refers to a recurrence of a disability shown by a medical examination, namely, a recurrence of the previously disabling medical condition that had terminated. Mr. Little's interpretation of the statute would require OPM not to determine whether the disability has recurred but to make a *de novo* determination of disability without regard to what previously had been the situation.

Nothing in the language or the legislative history of section 8337(e) supports Mr. Little's interpretation of the provision. The language itself does not draw the distinction Mr. Little would read into it. Instead, it simply refers to a "recurrence of the disability." "[T]he disability" is the same disability that previously had terminated, and it is difficult to comprehend how the disability can be said to have "recurred" when there has been no change in the employee's medical condition.

The legislative history indicates that this provision was adopted to correct what the Civil Service Commission viewed as an unconscionable oversight in the prior statute. Under that statute an employee whose disability had terminated was barred from ever again receiving a disability annuity even though his medical condition thereafter deteriorated so as again to disable him from performing his job. *See* Amendments to the Civil Service Retirement Act:

Hearings on S. 1640 Before the Subcomm. on Retirement of the Senate Comm. on Post Office and Civil Service, 87th Cong., 1st Sess. (1961) (Testimony of John W. Macy, Jr., Chairman, U.S. Civil Service Commission).

As Mr. Little concedes, there has been no change in his medical condition since his disability was found to have terminated in 1980. The only change has been in the nature of the work he had to do and his orthopedist's new understanding of the duties of the position. OPM and the Board reasonably concluded that this change in circumstances does not constitute a "recurrence of the disability" under section 8337(e).

AFFIRMED.