BRYSON, Circuit Judge.
 

 Brenda S. Licausi petitions for review of a decision of the Merit Systems Protection Board, Docket No. PH-831E-02-0276-I-1, sustaining the ruling of the Office of Personnel Management (“OPM”) that she was not entitled to reinstatement of her disability retirement annuity. We affirm.
 

 I
 

 Ms. Licausi was employed as an administrative assistant with the Internal Revenue Service. In 1976, she filed for and received disability retirement under the Civil Service Retirement System (“CSRS”) based on chronic phlebitis of both legs, a condition that left her unable to perform the duties of her position. She received a disability retirement annuity from that time until the year 2000. In that year, OPM notified Ms. Licausi that because she had earned more than 80 percent of the current rate of pay of the position from which she had retired she was considered restored to earning capacity and was no longer entitled to continue receiving disability benefits.
 
 See
 
 5 U.S.C. § 8337(a); 5 C.F.R. § 831.1209. The following year, Ms. Licausi sought reinstatement of her disability annuity. She asserted that she no longer met the 80 percent earnings threshold and that she continued to be disabled because of phlebitis. OPM denied Ms. Licausi’s request for reinstatement. In its initial decision on her reinstatement request, OPM concluded that there was “no medical evidence to show that your original cause for disability retirement, recurring phlebitis, still exists or of [sic] the same severity.” On Ms. Licausi’s request for reconsideration, OPM sustained the denial of benefits on the ground that “your medical condition for which you were retired has not recurred.”
 

 Ms. Licausi appealed to the Merit Systems Protection Board, which conducted a hearing on the appeal. Following the hearing, the administrative judge to whom the case was assigned upheld OPM’s decision denying Ms. Licausi’s request for reinstatement of her disability retirement benefits. The administrative judge concluded that “[a]lthough the objective clinical findings indicate that [Ms. Licausi] suf
 
 *1309
 
 fers from superficial phlebitis of the right leg, [her] medical evidence does not indicate that [her] ability to perform the duties of her Administrative Assistant or any other position is impaired.” Finding that Ms. Licausi had failed to establish that her condition restricted her from performing “any of the duties of her position or any other activities,” the administrative judge concluded that she had failed to prove by a preponderance of the evidence that she continued to be disabled and further concluded that the evidence did not indicate that her condition “negatively affects her ability to work or to perform as an Administrative Assistant.” Accordingly, the administrative judge ruled that although Ms. Licausi “may not be as productive as she would like ... she does not continue to be disabled.”
 

 II
 

 Although we have jurisdiction to review decisions of the Merit Systems Protection Board in disability retirement cases, the scope of our review is limited to correcting errors involving “important procedural rights, a misconstruction of the governing legislation, or some like error ‘going to the heart of the administrative determination.’ ”
 
 Lindahl v. Office of Pers. Mgmt.,
 
 470 U.S. 768, 782, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). We may not review the “factual underpinnings” of disability determinations.
 
 Anthony v. Office of Pets. Mgmt.,
 
 58 F.3d 620, 626 (Fed.Cir. 1995).
 

 Ms. Licausi argues that in order to be entitled to reinstatement of her disability benefits she was required to show only that the medical condition that led to her retirement either persisted or had recurred. It was improper, she contends, for the administrative judge to require her to demonstrate that because of her medical condition she could not perform the duties of her former position. In advancing that argument, she relies on the disability retirement statute, 5 U.S.C. § 8337, and the corresponding OPM regulation, 5 C.F.R. § 831.1211.
 

 Neither the statute nor the regulation provides support for Ms. Licausi’s legal argument. The pertinent subsection of the CSRS disability statute, 5 U.S.C. § 8337(e), provides that a disability annuitant whose annuity is terminated because of an “earning capacity provision,” and whose earnings in any subsequent year fall below 80 percent of the current rate of pay for the retiree’s former position, may obtain reinstatement of benefits if the retiree has not been reemployed in a federal position and “has not recovered from the disability for which he was retired.” Likewise, the OPM regulation provides that when a disability annuity stops, “the individual must again prove that he or she meets the eligibility requirements in order to have the annuity reinstated.” 5 C.F.R. § 831.1211(a). In the case of a disability annuitant whose earning capacity has been restored but who thereafter loses his or her earning capacity, the regulation provides that benefits will be reinstated if the annuitant “has not recovered from the disability for which retired.”
 
 Id.
 
 § 831.1211(e). The OPM regulations define “disability” to mean “inability, because of disease or injury, to render useful and efficient service in the employee’s current position, or in a vacant position in the same agency at the same grade or pay level for which the individual is qualified for reassignment.”
 
 Id.
 
 § 831.1202. That definition tracks the language of the disability retirement statute, which describes an employee as “disabled” if he or she is “unable, because of disease or injury, to render useful and efficient service in the employee’s position and is not qualified for reassignment ... to a vacant position
 
 *1310
 
 which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service.” 5 U.S.C. § 8337(a).
 

 The term “disability,” as used in the CSRS disability statute and regulations, thus contemplates not only the existence of a qualifying medical condition but also the inability to render useful and efficient service in the employee’s position or another similar position. For that reason, the statutory and regulatory requirement that the employee prove that he or she “has not recovered from the disability” for which retirement was granted necessarily implies that the employee must prove not only the existence of a medical condition, but also that the medical condition is disabling in nature, i.e., that it prevents the employee from rendering efficient and useful service in the employee’s position or an equivalent position.
 

 The requirement that the employee seeking disability retirement prove that the medical condition in question prevents him or her from rendering efficient and useful service applies both to the employee’s initial application for disability retirement,
 
 see Trevan v. Office of Pers. Mgmt.,
 
 69 F.3d 520, 526-27 (Fed.Cir.1995), and in other contexts as well. For example, the Merit Systems Protection Board has held that the employee has the burden of proving that he or she continues to suffer from the same disabling medical condition or injury and that the medical condition or injury continues to prevent the
 
 employee
 
 from rendering useful and efficient service in his or her position regardless of whether the issue is the employee’s continuing right to benefits, the right to reinstatement of benefits after a finding of recovery, or the right to reinstatement of benefits after a restoration of earning capacity.
 
 See Smith v. Office of Pers. Mgmt.,
 
 50 M.S.P.R. 465, 471-72 (1991) (proceeding to terminate benefits);
 
 Pion v. Office of Pers. Mgmt.,
 
 43 M.S.P.R. 446, 449 (1990) (proceeding to reinstate benefits after termination for recovery);
 
 Rountree v. Office of Pers. Mgmt.,
 
 38 M.S.P.R. 480, 483 (1988) (proceeding to terminate benefits);
 
 Dougherty v. Office of Pers. Mgmt.,
 
 36 M.S.P.R. 117, 121 (1988) (proceeding to reinstate benefits after termination for restoration of earning capacity);
 
 McMakin v. Office of Pers. Mgmt,
 
 32 M.S.P.R. 294, 298-99 (1987) (proceeding to terminate benefits). Because the retiree bears the burden of establishing his or her disability in each of these situations, the retiree is not entitled to resumption or retention of disability benefits simply by showing that his or her medical condition is similar, or even identical to, the condition that resulted in an initial determination of retirement eligibility. The retiree must also show that the medical condition is disabling, i.e., that it prevents the retiree from rendering useful and efficient service in the position from which he or she retired.
 
 See Dougherty,
 
 36 M.S.P.R. at 121;
 
 McMakin,
 
 32 M.S.P.R. at 298-99. Accordingly, we reject Ms. Licausi’s argument that she was entitled to reinstatement of her disability merely upon showing that she continued to suffer from the medical condition that led to the initial finding of eligibility for disability retirement and was not required to show that her condition made it impossible for her to render useful and efficient service in her position.
 

 Ms. Licausi also argues that the “position” to which the statute and regulations refer cannot be her former position. She fails, however, to advance any alternative position against which to measure her medical condition. We agree with the government that the applicable regulation, 5 C.F.R. § 831.1211, refers to the job requirements of the employee’s former job, from which disability retirement was
 
 *1311
 
 granted in the first place. Ms. Licausi therefore must demonstrate that her medical condition prevents her from performing the requirements of her former job in order to be considered “disabled.” That conclusion is consistent with this court’s decision in
 
 Little v. Office of Personnel Management,
 
 860 F.2d 1068 (Fed.Cir. 1988), in which we held that a retiree’s disability must be measured against the requirements of his former position, not the requirements of a prospective job that is offered to him.
 

 II
 

 Ms. Licausi’s second argument is that the administrative judge improperly upheld OPM’s decision on a different ground from the one on which OPM based its ruling. She contends that OPM’s decision was based on its conclusion that she did not prove that she continued to suffer from the same medical condition that had led to her initial retirement, while the administrative judge’s decision was based on her failure to establish that her condition prevented her from rendering useful and efficient service in her former position. By upholding OPM’s decision on a different ground, Ms. Licausi argues, the Merit Systems Protection Board violated the principle set forth in the Supreme Court’s decisions in
 
 Securities & Exchange Commission v. Chenery Corp.,
 
 318 U.S. 80, 87-88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), and
 
 Securities & Exchange Commission v. Chenery Corp.,
 
 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).
 

 The
 
 Chenery
 
 cases stand for the proposition that “a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.” 332 U.S. at 196, 67 S.Ct. 1575. That principle has long been applied to judicial review of agency action.
 
 See Nat’l R.R. Passenger Corp. v. Boston & Me. Corp.,
 
 503 U.S. 407, 420, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992);
 
 Motor Vehicle Mfrs. Ass’n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,
 
 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983);
 
 Burlington Truck Lines, Inc. v. United States,
 
 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). This court has declined to apply the rule of
 
 Chenery
 
 to Merit Systems Protection Board review of a personnel action by another executive agency, however, noting that the argument that the
 
 Chenery
 
 rule applies generally to Board review of agency action “confuse[s] the assigned roles of the Board, itself part of the administrative agency structure, and the courts.”
 
 Huber v. Merit Sys. Prot. Bd.,
 
 793 F.2d 284, 287 (Fed.Cir.1986). Yet even if the principles underlying
 
 Chenery
 
 apply to Merit Systems Protection Board review of certain kinds of agency action,
 
 see Home v. Merit Sys. Prot. Bd.,
 
 684 F.2d 155, 157-58 (D.C.Cir.1982), it is clear that those principles do not apply to Merit Systems Protection Board review of OPM disability retirement determinations.
 
 [1]
 

 
 *1312
 
 The Merit Systems Protection Board has statutory authority to review OPM decisions in CSRS disability cases under 5 U.S.C. § 8347(d)(1), which provides (with an exception inapplicable here) that OPM disability decisions may be appealed to the Board “under procedures prescribed by the Board.” As directed by statute, the Board has established procedures governing such appeals. In particular, the Board has promulgated 5 C.F.R. § 1201.56(a)(2), which provides as follows: “In appeals from reconsideration decisions of the Office of Personnel Management involving retirement benefits, if the appellant has filed the application, the appellant has the burden of proving, by a preponderance of the evidence, entitlement to the benefits.” That regulation makes clear that the appeal proceeding before the Board constitutes a de novo proceeding, quite different from the kind of limited review prescribed by section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, for judicial review of administrative action.
 
 See Spradlin v. Office of Pers. Mgmt.,
 
 84 M.S.P.R. 279, 283 (1999) (“appellants in disability retirement cases are ... entitled to a de novo hearing before the Board”);
 
 Chavez v. Office of Pers. Mgmt.,
 
 6 MSPB 343, 6 M.S.P.R. 404, 413 (1981) (in a disability retirement appeal, the Board must “consider
 
 de novo
 
 all the relevant evidence presented by both parties, whether offered at a hearing or transmitted as part of the administrative record”).
 

 As the Board has explained, it is the “ultimate decision maker” in a disability retirement appeal.
 
 Bynum v. Office of Pers. Mgmt.,
 
 89 M.S.P.R. 1, 7 (2001). Thus, the question for the Board is not whether OPM’s decision is supported by substantial evidence or otherwise should be upheld or rejected based on the record made before OPM. Instead, the parties are free to introduce new evidence, including live testimony, bearing on the question whether the retiree is entitled to benefits, and the Board is required to decide the case on the basis of all the evidence before it.
 
 Morgan v. U.S. Postal Serv.,
 
 48 M.S.P.R. 607, 610-11 (1991) (“The Board has rejected the notion that its scope of review is limited to consideration of the administrative record established before the agency.”);
 
 Stewart v. Office of Pers. Mgmt.,
 
 7 MSPB 746, 8 M.S.P.R. 289, 294 (1981) (“[T]he Board is both authorized and mandated ... to consider
 
 de novo
 
 all available evidence.”). If the Board is persuaded that the employee has met his or her burden of showing entitlement to benefits, the Board will direct that benefits be awarded; otherwise, it will sustain the denial of benefits.
 
 [2]
 
 Because the Board engages in de novo consideration of the eligibility issue, it is not confined to either upholding OPM’s decision on the ground invoked by OPM or remanding to OPM for further proceedings.
 
 See Grumman Data
 
 
 *1313
 

 Sys. Corp. v. Widnall,
 
 15 F.3d 1044, 1047 (Fed.Cir.1994) (“Under
 
 de novo
 
 review, a board may consider the analysis developed by the agency ... or produce and consider its own analysis.”).
 

 In light of the Board’s obligation to make an independent determination as to eligibility, its decisions in retirement disability cases fall outside the reach of the
 
 Chenery
 
 doctrine for reasons given in
 
 Chenery
 
 itself, as the Board’s decisions do not involve review of “a determination or a judgment that an administrative agency [OPM in this case] alone is authorized to make.”
 
 Chenery,
 
 332 U.S. at 196, 67 S.Ct. 1575;
 
 see Fomby-Denson v. Dep’t of the Army,
 
 247 F.3d 1366, 1373 (Fed.Cir.2001) (“When the new ground is not one solely committed to the administrative agency, the
 
 Chenery
 
 doctrine does not compel a remand to permit the agency to make an initial decision on that ground.”);
 
 Koyo Seiko Co. v. United States,
 
 95 F.3d 1094, 1101 (Fed.Cir.1996). The appropriate Supreme Court analogy is therefore not
 
 Chenery,
 
 but
 
 Helvering v. Gowran,
 
 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937). In that case, the Commissioner of Internal Revenue assessed a tax deficiency against the taxpayer, who sought a rede-termination by the Board of Tax Appeals. The Board of Tax Appeals upheld the Commissioner’s assessment, but on a legal theory different from the Commissioner’s. The court of appeals concluded that the Board of Tax Appeals was free to sustain the assessment on a different legal theory, because the taxpayer’s burden in the Board of Tax Appeals was to show that the assessment was erroneous on any proper theory. The Supreme Court agreed. It explained that “if the Commissioner was right in his determination, the Board properly affirmed it, even if the reasons which he had assigned were wrong.” 302 U.S. at 246, 58 S.Ct. 154.
 

 In this case, by analogy, the Merit Systems Protection Board was free to sustain OPM’s decision on a different ground because Ms. Licausi was required to show, in de novo proceedings before the Board, that she was eligible for disability retirement benefits. We therefore reject her argument that the Board’s decision must be reversed because its conclusion that she had failed to prove that she was unable to render useful and efficient service in her position was based on a different rationale from the one that OPM invoked in denying her request for reinstatement.
 

 AFFIRMED.
 

 [1]
 

 . The Board has referred indirectly to the
 
 Chenery
 
 doctrine in several cases involving Board review of agency disciplinary proceedings to support its holding that the Board may not uphold an agency disciplinary decision on the basis of misconduct different from the misconduct with which the employee was charged in the proceedings before the agency.
 
 See Hernandez
 
 v.
 
 Dep't of Educ.,
 
 42 M.S.P.R. 61, 71 (1989);
 
 Gottlieb v. Veterans Admin.,
 
 39 M.S.P.R. 606, 609 (1989). Although that principle has frequently been recognized by this court and the Board, it is not so much an application of the
 
 Chenery
 
 doctrine as an application of the due process principle that a person must be given notice of the charge on which the action against him is based.
 
 See O’Keefe v. U.S. Postal Serv.,
 
 318 F.3d 1310, 1315 (Fed.Cir.2002);
 
 Lachance v. Merit Sys. Prot. Bd.,
 
 147 F.3d 1367, 1371-72 (Fed.Cir.
 
 *1312
 
 1998);
 
 Shaw v. Dep’t of the Air Force,
 
 80 M.S.P.R. 98, 106-07 (1998).
 

 [2]
 

 . The principles that apply to the Board's disability determinations parallel those applicable to Board review of adverse agency actions covered by 5 U.S.C. § 7513. On an appeal from such an adverse agency action, the Board reviews de novo whether the agency's decision was justified.
 
 See Brook v. Cortado,
 
 999 F.2d 523, 528 (Fed.Cir.1993) ("The MSPB reviews
 
 de novo
 
 the merits of an agency's decision to take adverse action against an employee.”);
 
 Jackson v. Veterans Admin.,
 
 768 F.2d 1325, 1329 (Fed.Cir.1985) (the "appeal” to the Merit Systems Protection Board "requires a de novo determination of the facts”);
 
 Fucik
 
 v.
 
 United States,
 
 228 Ct.Cl. 379, 655 F.2d 1089, 1097 (1981) (“It is the Board's obligation to consider the cases before it de novo without regard to any decision by the agencies that have gone before it.”);
 
 Pardo v. Dep’t of the Army,
 
 9 MSPB 458, 10 M.S.P.R. 206, 208-10 (1982);
 
 Zeiss v. Veterans Admin.,
 
 7 MSPB 516, 8 M.S.P.R. 15, 16-17 (1981).