# United States Court of Appeals for the Federal Circuit

2008-3236

SYLVIA M. REILLY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Brian T. Edmunds, Arnold & Porter LLP, of Washington, DC, argued for petitioner. With him on the brief was Justin S. Antonipillai.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel was Earl A. Sanders, Attorney, United States Office of Personnel Management, of Washington, DC.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3236

SYLVIA M. REILLY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in DE831E070359-I-1.

_____

DECIDED:   July 15, 2009

_____

Before MICHEL, <u>Chief Judge</u>, DYK and MOORE, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Sylvia M. Reilly ("Reilly") petitions for review of a decision of the Merit Systems Protection Board ("Board") affirming the denial of petitioner's application for disability retirement. Because we hold that the Board applied an erroneous legal standard by categorically rejecting post-retirement medical evidence, we vacate and remand.

BACKGROUND

From May 26, 1984, to March 15, 2006, Reilly worked as a mail carrier in Glendale, Arizona for the United States Postal Service. Reilly's duties included driving a postal vehicle to deliver mail in rural Arizona, parts of which are frequently dusty. On March 15, 2006, Reilly resigned for "ill health." During at least the later part of her service Reilly had chronic asthma, a permanent condition that, if severe, includes potentially life-threatening attacks sometimes requiring hospitalization. Chronic asthma can be aggravated by a variety of environmental factors, including smoking, airborne dust or dirt, high temperatures, humidity, and pollutants.

During the final few years of her employment, Reilly visited her primary doctor frequently, and the doctor's notes documented regular complaints about asthma of varying severity. However, prior to her resignation Reilly apparently was not examined by a specialist for diagnosis and treatment. In the later years of her employment, Reilly sought accommodation for her asthma based on her doctor's recommendations. In August 2003, Reilly and her doctor wrote to the Postal Service about Reilly's asthma, and requested that Reilly be permitted to start work earlier in the day. Her doctor wrote that Reilly's asthma "has been aggravated by the exposure to the high temperatures, pollutants and humidity in the air," and requested that Reilly be permitted to start work early in the morning so that she would not be exposed "to the asthma trigger factors that occur highest between 3:00PM and 5:00PM." This request was denied.

In January 2006, Reilly and her primary doctor again wrote to the Postal Service about Reilly's asthma in a certification of leave under the Family Medical Leave Act. Her doctor certified to the Postal Service that Reilly had severe asthma, and stated that Reilly "gets sudden and random attacks of shortness of breath that can be life-threatening." Her doctor also stated that the condition is of "permanent/lifetime" duration. Her doctor stated that these attacks occur one to two times per month and result in incapacity of one to three days for each occurrence. Reilly also wrote to the Postal Service regarding her asthma, informing them that dirt in her vehicle aggravated her asthmatic condition.

On March 1, 2006, Reilly received a letter of warning from her supervisor, citing Reilly's absences and stating that Reilly was "failing to meet essential job requirements." On March 15, 2006, Reilly resigned, citing "ill health." On or about April 5, 2006, Reilly applied for disability retirement, stating that she became disabled in March 2006. Under the applicable regulations, Reilly's resignation did not bar an application for disability retirement. 5 C.F.R. § 831.1204.

With her April 5, 2006, application, Reilly listed two physicians—her primary doctor and a pulmonary specialist named Dr. Orr—as "physician(s) . . . from whom you plan to request Physician's Statements" supporting the application.

Over the rest of the summer, Reilly continued to develop her application and supporting documents. In June 2006, the pulmonary specialist conducted a physical examination, finding scattered rhonchi in Reilly's lungs, and commissioned an X-ray examination which revealed scarring in the lungs and small airway disease.

In August 2006, the pulmonary specialist submitted a form to the Office of Personnel Management ("OPM") in support of Reilly's application for disability retirement. The specialist stated that in three visits with Reilly in June, July, and August, Reilly had shortness of breath and coughs, and that she had a history of chronic asthma. The specialist noted:

> [Reilly's] asthma is an ongoing condition that can be exacerbated by outdoor elements (including dust), illness, etc. I am unable to predict when this will happen or the duration of the occurrences. . . . Restrictions for this patient are as follows: No riding in or operating vehicles that are dusty on the interior. The vehicle the patient operates must be clean on the interior and free of dust. This restriction is to be in place at all times and has no expiration, as asthma is a chronic condition.

Reilly's primary doctor also submitted documentation based on his examinations occurring both during the time of her employment and afterwards, concluding that Reilly had "asthma severe and chronic – lifetime duration, exacerbated by dust, dirt, and pollen, improved but not cured with medications." Reilly also submitted her own observations of her condition and its impact on her work, stating that she "was having asthma attacks often when the air quality was bad" or there was dust outside or in her vehicle, and often had to miss work. Reilly also obtained lay statements from coworkers and others familiar with the impact of her medical condition on her work, confirming that dust and dirt aggravated Reilly's asthma; that she was forced to rely on coworkers to complete her routes; and that she missed many work days because she was sick.

In an effort to rebut Reilly's doctors' statements and lay evidence, Reilly's supervisor for the eight months before her resignation submitted a partially completed standard form for use in disability applications, answering "no" to the question of whether Reilly's performance was "less than fully successful in any critical element of position." Asked to explain the impact of Reilly's absence on work operations, the supervisor answered "SHE QUIT." Asked whether Reilly's conduct was unsatisfactory, the supervisor cryptically answered "NO CONDITION." The supervisor did not answer any other question on the form about Reilly's medical condition or work performance. Apparently the Postal Service did not produce any other evidence about Reilly's work performance or medical condition.

On December 14, 2006, after Reilly's application and supporting statements were complete, OPM denied Reilly's application for disability retirement. OPM stated that the "supervisor did not document any service deficiencies in [Reilly's] performance, attendance or conduct. She only noted that [Reilly] quit." OPM further stated that it reviewed all of Reilly's medical documentation, and that "no medical records prior to your resignation were submitted to show that your asthma was of the severity to substantiate disabling condition prior to your resignation." On April 16, 2007, OPM denied Reilly's request for reconsideration, repeating many of the same reasons provided in its original decision.

On May 11, 2007, Reilly appealed pro se to the Board, and did not request a hearing.[1]  On July 24, 2007, OPM submitted a two-page expert report from Dr. Bradley, a doctor chosen by OPM to provide a medical opinion in support of OPM's decision.  Dr. Bradley did not examine Reilly, but simply analyzed the medical evidence submitted by Reilly's doctors from both before and after Reilly's resignation and opined:

> This woman is not disabled. . . .  In a ten month [sic] from September 2005 to the end of June 2006, this woman had one minor episode of asthma.  Documents prior to this period from 2004 did not show any evidence of asthma.  Her asthma was clearly well controlled, and mild.  She is not disabled. I strongly recommend denial of this application.

The Board's administrative judge ("AJ") reversed OPM's decision in an initial decision on August 31, 2007.  The AJ reviewed the relevant medical and lay testimony presented by Reilly.  The AJ found that Reilly, "while still employed . . . did become disabled as a result of her chronic asthma and the dust and other impurities she would come into contact with on her route.  I further find that her asthma resulted in deficiencies in her conduct, performance and attendance."  The AJ noted that the opinion of OPM's medical expert was based only on review of the records rather than actual physical treatment or examination.  The AJ also reviewed the supervisor's statement, and found that, in light of all the other evidence, the supervisor's statement was "less than accurate, if not less than truthful."  Finally, the AJ found that the agency was unable to accommodate her condition by either changing the start time of Reilly's shift, keeping Reilly's vehicle clean, or transferring Reilly to a vacant position.

---

[1]    Reilly appears to have proceeded pro se until her petition to our court, where she is represented pro bono.  We thank Reilly's pro bono counsel Justin S. Antonipillai and Brian T. Edmunds of Arnold & Porter, LLP, for their service.

OPM filed a petition for review to the full Board, and on March 14, 2008, the Board reversed the AJ. The Board found that Reilly had not established that she had "become disabled while employed." Reilly v. Office of Pers. Mgmt., 108 M.S.P.R. 360, 363 (2008). The Board held that, although the AJ could rely on pre-retirement medical evidence, it was error for the AJ to rely on post-retirement medical evidence. Id. at 364.

The Board analyzed the evidence that preceded Reilly's resignation. Id. The Board discussed the various communications by Reilly's primary doctor to the Postal Service and the medical notes from the doctor's treatments. Id. The Board found that, although some statements in these notes reflected that Reilly's asthma was severe, other statements indicated that the asthma improved with medication, and that it was "moderate" with only "mild diffuse wheezing" and "no rhonci." Id. Looking at this pre-resignation evidence, the Board concluded that there was little medical evidence suggesting that appellant was disabled. Id. at 365.

In discussing the other medical evidence, the Board first noted that much of Reilly's medical evidence, including the medical examination by Reilly's primary doctor on April 25, 2006; the medical tests and examinations by and for the pulmonary specialist; as well as the results of the x-rays and other tests ordered by the specialist; "post-dates the appellant's resignation, and does not address her condition at the time of her resignation." Id. at 364. The Board then stated that "to the extent that the AJ relied on [this evidence] to determine that the appellant was disabled, this was error." Id. The Board also noted the letter from the specialist indicating that Reilly was restricted from riding in dusty vehicles. The Board stated that "this letter post-dates the appellant's March 15, 2006 resignation, and does not address her condition at the time

of her resignation. We therefore do not find it persuasive on the issue of whether the appellant was disabled when she resigned." Id.

The Board also cited the lay testimony provided by Reilly, and noted that "[a]n employee's own evidence concerning her medical condition is entitled to weight in a disability retirement case when it is supported by competent medical evidence. In this case, however, there is little supportive competent medical evidence indicating she was disabled." Id.

The Board concluded that Reilly was not disabled when she resigned, and so did not address the AJ's finding that the agency was unable to accommodate Reilly. Reilly timely filed a petition for review to this court. We have jurisdiction pursuant to 29 U.S.C. § 1295(a)(9), 5 U.S.C. § 7703(b)(1), and 5 U.S.C. § 8347. Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 791-99 (1985).

## DISCUSSION

Our jurisdiction to review disability determinations is quite limited. The Civil Service Retirement Act provides in pertinent part that:

> The Office [of Personnel Management] shall determine questions of disability and dependency arising under this subchapter. Except to the extent provided under subsection (d) of this section [dealing with findings of mental disability], the decisions of the Office concerning these matters are final and conclusive and are not subject to review.

5 U.S.C. § 8347(c) (emphasis added). Despite the seemingly unequivocal language of the statute, as the Supreme Court has stated, there is a strong presumption favoring judicial review that can only be rebutted "upon a showing of clear and convincing evidence of a contrary legislative intent." Lindahl, 470 U.S. at 778 (quotation and citation omitted).

In Lindahl, the Supreme Court analyzed the language and history of § 8347. As the Court in Lindahl noted, "§ 8347(c) imposes 'a special and unusual restriction on judicial examination, and under it courts are not as free to review [agency] retirement decisions as they would be if the finality clause were not there.'" Lindahl, 470 U.S. at 780 (quoting Scroggins v. United States, 397 F.2d 295 (Ct. Cl. 1968)). However, the Court concluded that the statute did not entirely deprive our court of jurisdiction to review decisions of the Board on disability claims. The Court cited approvingly our predecessor court's decision in Scroggins, 397 F.2d 295, which held that this court had jurisdiction to review whether there has been "'a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination'" but had no jurisdiction to review factual determinations. Lindahl, 470 U.S. at 780-81 (quoting Scroggins, 397 F.2d at 297). The Supreme Court adopted this standard.

The result is that, under Scroggins and Lindahl, we cannot review Board decisions for substantial evidence. Lindahl, 470 U.S. at 781-82. However, in the rare case where the petitioner alleges that the agency committed legal errors of sufficient gravity, we have jurisdiction to review the Board's decision. Lindahl, 470 U.S. at 790 n.26.

The scope of our review under Lindahl can be understood by examining the prior cases cited by the Supreme Court as applying the Scroggins standard, as well as more recent cases applying Scroggins after Lindahl. These cases generally fall into either of two categories: first, there are cases holding that we cannot review issues related to evidentiary sufficiency or to minor legal errors. For example, in Gaines v. United States,

158 Ct. Cl. 497, 501-503 (1962), relied on by the court in <u>Scroggins</u> and cited in <u>Lindahl</u>, the court rejected "hyper-technical arguments that the [CSC] did not follow every jot and tittle of the applicable procedures," as well as challenges to weighing of medical evidence, as beyond the jurisdiction of the court. <u>See also</u> <u>Davis v. Office of Pers. Mgmt.</u>, 470 F.3d 1059, 1060-61 (Fed. Cir. 2006) (no jurisdiction over failure "to consider the totality of the evidence" or specific evidentiary rulings within the discretion of the Board); <u>Brenneman v. Office of Pers. Mgmt.</u>, 439 F.3d 1325, 1327 (Fed. Cir. 2006) (rejecting argument that the Board "failed to consider" certain evidence); <u>Baker v. Office of Pers. Mgmt.</u>, 782 F.2d 993, 994 (Fed. Cir. 1986) (no jurisdiction to review whether Board decision supported by substantial evidence); <u>Smith v. Office of Pers. Mgmt.</u>, 784 F.2d 397, 399-401 (Fed. Cir. 1986) (no jurisdiction to review whether uncontroverted evidence established disability); <u>Fitzgerald v. United States</u>, 623 F.2d 696, 698-700 (Ct. Cl. 1980) (no jurisdiction to review harmless procedural error in withholding a government medical opinion); <u>Fancher v. United States</u>, 588 F.2d 803, 806-807 (Ct. Cl. 1978) (no jurisdiction over argument that agency "did not properly consider and weigh all the relevant evidence"); <u>Scroggins</u>, 397 F.2d at 298-300 (no jurisdiction to review fact determination based on the resolution of "a pure conflict of medical evidence" where no showing that agency "did not examine all the material before them").

On the other hand, we have held that we can review claims of serious legal error in the course of the proceedings. <u>See</u> <u>Rapp v. Office of Pers. Mgmt.</u>, 483 F.3d 1339, 1340-42 (Fed. Cir. 2007) (question of whether the appellant was incompetent and entitled to appointed counsel was within our jurisdiction); <u>Gooden v. Office of Pers. Mgmt.</u>, 471 F.3d 1275, 1278-82 (Fed. Cir. 2006) (reviewing Board decision based on

concession by the government that the Board misapplied the established legal standard); Marino v. Office of Pers. Mgmt., 243 F.3d 1375, 1377-78 (Fed. Cir. 2001) (reviewing whether "light duty" work was, as a legal matter, a reasonable accommodation); Bracey v. Office of Pers. Mgmt., 236 F.3d 1356, 1358-63 (Fed. Cir. 2001) (same); Little v. Office of Pers. Mgmt., 860 F.2d 1068, 1070 (Fed. Cir. 1988) (affirming, rather than dismissing, because "[a]lthough we reject Mr. Little's [statutory interpretation] argument, we cannot say that it is frivolous or so insubstantial as to preclude us from considering it"); Baker v. Office of Pers. Mgmt., 782 F.2d 993, 993-995 (Fed. Cir. 1986) (reviewing claims that it was improper to deny disability retirement to someone otherwise eligible simply because "ailments continued, in large part, as a result of her own failure to follow medically-recommended corrective procedures"); Allen v. United States, 571 F.2d 14, 17-19 (Ct. Cl. 1978) (reviewing determination based on legal error as to the standard for disability of dual military/civilian employees); Polos v. United States, 621 F.2d 385, 390-93 (Ct. Cl. 1980) (en banc) (reviewing the legal question dealt with in Allen and overruling the specific legal interpretation adopted in Allen).

The scope of our review under Lindahl and Scroggins was most recently addressed by this court in Vanieken-Ryals v. Office of Personnel Management, 508 F.3d 1034 (Fed. Cir. 2007). We described the scope of our review, concluding that "we may only address the critical legal errors, if any, committed by the [Board] in reviewing OPM's decision." Id. at 1039.

In Vanieken-Ryals, the appellant sought to establish her psychological disability by submitting, among other things, letters and medical reports from her doctors. Id. at

1036-38. Her doctors' reports were based primarily on the doctors' consultations with the petitioner, and relied on the petitioner's own description of her psychological symptoms. Id. In denying her claim for disability, OPM and the Board gave no weight to the medical evidence because the appellant failed to submit any "objective" medical evidence "such as emergency room reports showing incidents of panic attack . . . [and] relevant psychiatric studies or test results." Id. at 1039-40. According to OPM, the doctors' opinions were entitled to no weight because the doctor "provided no details concerning any mental status evaluation," and "does not provide copies of any formal cognitive testing." Id. Before the Board, the AJ noted that the medical evidence relied on the appellant's account of her symptoms, and stated that "the evidence presented by Dr. Nichols is only as good as the information given to her by [the appellant]," and that evidence based on appellant's "subjective narrative" would not be considered. Id.

We rejected the distinction drawn by the Board and OPM between objective evidence of the appellant's condition and subjective, i.e. self-reported, evidence of the appellant's condition. We noted that the doctor's reports inherently involved a determination by the doctor that the appellant's "account of these symptoms is credible." Id. at 1042. We held that under general evidentiary rules there was no basis for rejecting such "subjective" medical evidence as irrelevant, and that this legal error went to the heart of the administrative determination. Id. at 1043-44.

In interpreting the Board's decision, we cautioned that the court "must be discerning and cannot be satisfied by opinions that invoke the trappings of factual analysis—e.g., by vaguely describing broad swaths of evidence as 'insufficient' or as

failing to carry the claimants burden, or simply asserting that all record evidence was considered." Id. at 1040.

> [W]hen read closely and carefully, [the Board's decision] reveal[s] that absolutely no weight was given to certain evidence solely because it cannot generally be classified as "objective" and not because of any specific identifiable defect. . . . <u>Disqualification of evidence because of its type is an imposition of a legal standard because it inherently imposes a categorical requirement.</u> When the use of such a standard is dispositive of disability retirement claims, they go to the heart of the administrative determination, <u>and we are charged with resolving whether the imposed standard and its inherent evidentiary requirement are lawful.</u>

Id. (emphasis added).

II

Applying these standards, we first consider Reilly's argument that the Board "act[ed] arbitrarily and capriciously in conducting a legally insufficient factual analysis" by failing to consider particular items of evidence. For support, Reilly relies primarily on the fact that this evidence was not explicitly mentioned in the Board's decision. We conclude that this claim is beyond our jurisdiction to review. As we stated in <u>Davis v. Office of Personnel Management</u>, arguments relating to whether "the Board improperly failed to consider the totality of the evidence . . . are, in reality, challenges to the factual underpinnings of the Board's determination. Under <u>Lindahl</u>, we cannot entertain these arguments." 470 F.3d at 1060-61.

By contrast, Reilly's argument that that the Board categorically rejected all uncorroborated lay evidence is of the type that, if established, likely would be within our

jurisdiction to review.[2] Under Scroggins, we have jurisdiction to determine whether the Board gave no weight to evidence pursuant to a legal "error going to the heart of the administrative determination" or "a substantial departure from important procedural rights."

However, the Board did not reject Reilly's lay evidence. Rather, the Board discussed the contents of Reilly's lay evidence of her condition and its effect on her employment. The Board specifically recognized that "[a]n employee's own evidence concerning her medical condition is entitled to weight in a disability retirement case when it is supported by competent medical evidence." Reilly urges that this statement imposed a legal requirement that each piece of lay evidence must be corroborated by medical evidence. However, as the government notes, OPM regulations require the appellant to provide medical documentation supporting the claim for disability. 5 C.F.R. § 831.1206. In our view, the Board was merely reciting, albeit imprecisely, OPM's regulatory requirement that all claims for disability must be supported by medical documentation. We do not read the Board as holding that each fact must be established by medical documentation. Indeed, as the Board stated in Chavez v. Office of Personnel Management, 6 M.S.P.R. 404, 422 (1981), "expert diagnostic opinion and evidence alone may not enable a fact finder properly to determine whether [a medical impairment] amounts to a disability;" indeed, certain facts, such as the appellant's job requirements and "the effect of [the medical] impairments upon the Claimant," are hardly conducive to medical support.

---

[2] To the extent that Reilly argues that the Board required too much medical evidence, this is not the kind of error over which we have jurisdiction.

Finally, Reilly urges that the Board erred in categorically holding that post-resignation evidence of the applicant's condition should not be considered. The government conceded at oral argument that, if the Board had adopted such a categorical legal rule, it would be unlawful and within our jurisdiction to reverse. However, the government urges that the Board did not adopt such a rule. We disagree.

To be sure, we do not read the Board as suggesting that all medical opinions rendered post-retirement are inadmissible; indeed, the Board relied on the opinion of OPM's own expert medical doctor rendered post-retirement. What we understand the Board to be holding is that medical opinions rendered post-retirement are admissible only if they are based on pre-retirement tests, observations, interviews, and medical examinations, and address the employee's pre-retirement condition.

The Board clearly adopted a rule that post-resignation medical evidence is categorically irrelevant, and that it was legal error for the AJ to rely on such evidence. After very briefly reciting the post-resignation medical evidence, the Board stated that "[b]ecause all of this evidence post-dates the appellant's resignation, and does not address her condition at the time of her resignation, to the extent that the AJ relied on it to determine that the appellant was disabled, this was error." Reilly, 108 M.S.P.R. at 364. The Board repeated this categorical exclusion in addressing the letter of August 2006 by the pulmonary specialist. The Board stated that "this letter post-dates the appellant's . . . resignation, and does not address her condition at the time of her resignation. We therefore do not find it persuasive on the issue of whether the appellant was disabled when she resigned." Id. at 364-65.

The Board made no mention of how much (or how little) time had elapsed after resignation, nor addressed why, on these particular facts, evidence of the appellant's medical condition a few months after resignation was of no value in establishing the appellant's medical condition at the time of resignation. Instead, the Board categorically held that it is legal error to consider any evidence that is noncontemporaneous and does not explicitly refer back to the condition at the time of resignation. A subsequent decision of the Board supports this interpretation. In Luzi v. Office of Personnel Management, 109 M.S.P.R. 79, 84 (2008), the Board cited Reilly as support for declining to consider any evidence that "post-dates the appellant's . . . separation, and does not address his condition [before separation]."

As stated previously, the government does not defend this rule. We cannot see any basis for such a rule which contradicts the general rule that "OPM [and the Board] must consider all of an applicant's competent medical evidence." Vanieken-Ryals, 508 F.3d at 1041.

There is no question that such evidence may be considered under general evidentiary principles. "Although the Federal Rules of Evidence do not apply to Board hearings, they are a helpful guide to proper hearing practices." Yanopoulos v. Dep't of Navy, 796 F.2d 468, 471 (Fed. Cir. 1986) (citation omitted). The rule is that "[a]ll relevant evidence is admissible, except as otherwise provided by [the Rules or other law]." Fed. R. Evid. 402; Unif. R. Evid. 402. Under the Uniform Rules of Evidence and the Federal Rules of Evidence, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Fed. R. Evid. 401; Unif. R. Evid. 401. "The provisions that all relevant evidence is admissible . . . are 'a presupposition involved in the very conception of a rational system of evidence.'" Advisory Committee Notes to Fed. R. Evid. 402 (quoting Thayer, Preliminary Treatise on Evidence 264 (1898)).

Thus, it is established that "the tests of relevancy . . . are of the same general nature for retrospectant evidentiary facts." Wigmore on Evidence, § 148 (4th ed. 1983). "[P]assage of time alone is insufficient to support an objection of remoteness." 31A C.J.S. Evidence § 295 (2008). Remoteness is only established where the passage of time "undermin[es otherwise] reasonable inferences due to the likelihood of supervening factors." 1 McCormick on Evidence § 185 (6th ed. 2006). The field of forensic medicine abounds with examples of subsequent medical examinations relevant to a prior condition. As a classic example, inferences about prior intoxication can be drawn from blood alcohol tests conducted at a later time. See 1 McCormick on Evidence § 205 (6th ed. 2006).

Additionally, although the regulatory scheme and standard on review are different in Social Security cases,[3] the reasoning of these cases also provides support for the general principle that later medical evidence can be relevant. As the Fifth Circuit stated in Ivy v. Sullivan, "noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant. . . . Subsequent medical evidence is relevant because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." 898 F.2d 1045,

---

[3]     Social Security regulations deal with the treatment of retrospectant evidence in some detail. See SSR 83-20.

1049 (5th Cir. 1990) (citations and quotation marks omitted); see also Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  As stated by the Second Circuit:

> We have observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present.

Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004) (alterations omitted).  Medical examinations identifying a disability are always retrospectant in some sense; as the Ninth Circuit observed, "[i]t is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

Similarly, in military retirement cases this court's predecessor has held that subsequent medical evidence can be highly relevant to determining the prior medical condition.  See, e.g., Jordan v. United States, 205 Ct. Cl. 65 (1974) (stressing "the importance . . . of considering the applicant's medical condition subsequent to his discharge, and the professional evaluation and treatment thereof, in its determination of fitness for duty as of the date of discharge"); Beckham v. United States, 392 F.2d 619, 625-26 (Ct. Cl. 1968) ("[W]e must look to manifestations of the disease or ailment appearing both before and after the point in time of separation" to determine fitness at the time of separation); see also Farrar v. United States, 358 F.2d 965 (Ct. Cl. 1965).

Nothing in the OPM regulations contradicts these general principles or specifies that the medical examination or documentation must have occurred prior to retirement. In fact, the regulations permit filing an application within one year after separation, 5

C.F.R. § 831.1204, and explicitly countenance taking additional medical examinations during the pendency of the application to assist OPM in making a decision, 5 C.F.R. § 831.1206(c). OPM's standard form for doctor statements is also written in the present tense, and includes no question specifically asking what the applicant's medical condition was at the time of her separation from service. OPM Standard Form 2824C.

We conclude that the Board erred in adopting a categorical rule barring consideration of post-retirement evidence. Where proximity in time, lay testimony, or some other evidence provides the requisite link to the relevant period the subsequent medical evidence can be very probative of a prior disability. This is not to say that a later medical condition will always be relevant or entitled to substantial weight. There are circumstances where such evidence is irrelevant or entitled to little weight as a factual matter, such as where the later medical condition is attributable to some incident that occurred after the period in question, or where there is a substantial lapse of time and a lack of evidence connecting the prior condition to the more recent medical evidence. However, it is equally clear that evidence of a later medical condition will not always be irrelevant. Here, for example, the specialist's examinations occurred within a few months of Reilly's retirement, and there was no suggestion of any event that would have caused Reilly's condition to deteriorate at an unusual rate. Also, lay testimony might establish the same symptoms and severity before retirement as was observed after retirement.

The Board erred in categorically excluding post-resignation evidence. As in Vanieken-Ryals, this legal error is a substantial departure from important procedural rights and goes to the heart of the administrative determination. 508 F.3d at 1043-44.

Thus, this case must be remanded to the Board for further consideration based on the appropriate legal standard.

## CONCLUSION

For the foregoing reasons we vacate and remand for further proceedings consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>

## COSTS

No costs.