NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3149

VENANCIO CABANAYAN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Steven P. Cohn, Advocacy Center for Employment Law, of San Jose, California, for petitioner.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3149

VENANCIO CABANAYAN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in SF844E080686-I-1.

_____

DECIDED: March 12, 2010

_____

Before BRYSON, ARCHER, and PROST, Circuit Judges.

PROST, Circuit Judge.

Petitioner Venancio Cabanayan ("Cabanayan") appeals the final decision of the Merit Systems Protection Board ("Board") affirming the Office of Personnel Management ("OPM")'s denial of his application for disability retirement benefits. Cabanayan v. Office of Pers. Mgmt., No. SF844E080686-I-1 (M.S.P.B. Dec. 23, 2008) ("Cabanayan"). Because the Board did not credit some of Cabanayan's medical evidence based on a legal standard we have since held to be erroneous, we vacate and remand for reconsideration under the proper legal standard.

BACKGROUND

Cabanayan worked as a mail carrier for the U.S. Postal Service for more than

twenty years prior to his resignation on December 26, 2006. Cabanayan timely filed an application for disability retirement under the Federal Employees Retirement System ("FERS"), alleging a right shoulder injury as the basis for his disability. OPM denied Cabanyan's application on June 10, 2008 and, upon reconsideration, affirmed its earlier decision on July 28, 2008.

Cabanayan appealed OPM's decision to the Board. In support of his appeal, Cabanayan submitted medical records regarding his shoulder injury from April 2006 through June 2008, i.e., from before and after his December 26, 2006 resignation. At a hearing before an administrative judge, Cabanayan presented four witnesses: Cabanayan, his wife, Gregory Cheung, M.D. ("Dr. Cheung"), and Kevin Murray, M.D. ("Dr. Murray"). Dr. Cheung explained that he examined Cabanayan for right shoulder pain on five occasions, the first of which was three months after Cabanayan's retirement, and that his associate examined Cabanayan's shoulder nine months before Cabanayan's retirement. He testified that, in his opinion, Cabanayan was disabled before retirement and remained disabled as of his last examination in June 2008. Dr. Murray, an orthopedic surgeon, testified that he performed an arthroscopy and debridement of Cabanayan's right shoulder in June 2008, during which he found degenerative change and fraying of the labrum, an inflamed subacromial bursa, and a boney spur. Dr. Murray testified that it was impossible to know whether these conditions existed at the time of Cabanayan's retirement, but that the conditions would, at present, prevent him from performing the duties of a mail carrier.

In an initial decision dated December 23, 2008, the administrative judge found that Cabanayan was not eligible for disability retirement because he failed to establish

that, while working at the U.S. Postal Service, he became disabled due to a medical condition causing deficient performance or that, absent such deficiency, his medical condition was incompatible with either useful or efficient service. Cabanayan, slip op. at 11, 13. Cabanayan did not appeal this initial decision to the Board. The initial decision therefore became the final decision of the Board.

Cabanayan timely petitioned for review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our review of disability retirement decisions under FERS is limited to determining whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 791 (1985) (quoting Scroggins v. United States, 397 F.2d 295, 297 (Ct. Cl. 1968)); Anthony v. Office of Pers. Mgmt., 58 F.3d 620, 622, 625-26 (Fed. Cir. 1995). We cannot review the "factual underpinnings" of such decisions. Lindahl, 470 U.S. at 791. This limitation prevents us from addressing challenges to "the Board's factual determination as to whether [a] Petitioner was disabled within the meaning of the FERS statute," Trevan v. Office of Pers. Mgmt., 69 F.3d 520, 523-24 (Fed. Cir. 1995), as well as assertions that the Board wrongly weighed the evidence, Anthony, 58 F.3d at 626; see Davis v. Office of Pers. Mgmt., 470 F.3d 1059, 1060-61 (Fed. Cir. 2006).

Cabanayan's main arguments are outside our limited scope of review. Specifically, Cabanayan's contention that he met his burden of proof with "uncontroverted" evidence showing that he was disabled prior to retirement and that the

Board erred in reaching a contrary conclusion challenges the "factual underpinnings" of the Board's determination that he was not disabled within the meaning of the FERS statute, which we lack authority to review. See Smith v. Office of Pers. Mgmt., 784 F.2d 397, 399-400 (Fed. Cir. 1986); see also Trevan, 69 F.3d at 523-24. Similarly, we cannot entertain Cabanayan's fact-based argument that the Board improperly weighed the evidence before it. See Davis, 470 F.3d at 1060-61; Anthony, 58 F.3d at 626.

We now turn to Cabanayan's argument that the Board, in discounting the testimony and opinions of his witness, Dr. Cheung, misapplied the legal standard for assessing medical evidence. In reviewing a disability retirement determination, we have an obligation to assure that the Board applied the correct legal standards, Bruner v. Office of Pers. Mgmt., 996 F.2d 290, 291 (Fed. Cir. 1993), and must address any "critical legal errors" in the Board's decision, Vanieken-Ryals v. Office of Pers. Mgmt., 508 F.3d 1034, 1038 (Fed. Cir. 2007). Specifically, we have the authority "to determine whether the Board gave no weight to evidence pursuant to a legal 'error going to the heart of the administrative determination' or 'a substantial departure from important procedural rights.'" Reilly v. Office of Pers. Mgmt., 571 F.3d 1372, 1379 (Fed. Cir. 2009) ("Reilly II") (quoting Scroggins, 397 F.2d 295). Cabanayan's argument that the Board committed legal error in failing to credit Dr. Cheung's testimony is therefore within our scope of review.

In his analysis of Cabanayan's post-retirement medical evidence, the administrative judge cited to Reilly v. Office of Personnel Management, 108 M.S.P.R. 360 (2008) ("Reilly I"). Cabanayan, slip op. at 12 & n.6. Reilly I held that the Board will consider a medical opinion rendered post-retirement only if the opinion is "based on pre-

retirement tests, observations, interviews, and medical examinations[] and address[es] the employee's pre-retirement condition." Reilly II, 571 F.3d at 1380; see Reilly I, 108 M.S.P.R. at 363-65. On July 15, 2009, after the administrative judge issued his decision denying Cabanayan's appeal, this court vacated the Reilly I decision in Reilly II. Reilly II, 571 F.3d at 1380-82. In Reilly II, we concluded that the Board committed legal error in categorically rejecting medical evidence or opinions not based on pre-retirement tests or examinations. Id.

After citing to Reilly I, the administrative judge discounted Dr. Cheung's opinion that Cabanayan was disabled at the time he retired. Specifically, in the only reference to Dr. Cheung's testimony in the administrative judge's analysis, the administrative judge explained, "Dr. Cheung opined that [Cabanayan] was disabled as of December 26, 2006, but I find that Dr. Cheung's opinion was based in significant part on Dr. Murray's surgical findings of a condition in 2008." Cabanayan, slip op. at 12 & n.6. In our view, the administrative judge did not give any weight to Dr. Cheung's opinion solely because it was based on a medical condition found in 2008, after Cabanayan had retired. This reasoning is consistent with Reilly I's standard for rejecting post-retirement medical opinions, which we have since concluded is legally erroneous. See Reilly II, 571 F.3d at 1380. While we recognize that, as the Government contends, there may be valid and permissible reasons for discounting Dr. Cheung's opinion, the administrative judge did not articulate any other reason for his failure to credit Dr. Cheung's testimony. Thus, we conclude that the administrative judge committed legal error by relying on Reilly I's improper legal standard, to which he expressly cited before addressing this evidence. As we held in Reilly II, this legal error constitutes "a substantial departure

from important procedural rights and goes to the heart of the administrative determination" and is therefore the type of error that the Supreme Court charged this court to guard against in the disability retirement context. 571 F.3d at 1382-83 (citing Vanieken-Ryals, 508 F.3d at 1043-44).

Because the Board applied an erroneous legal standard in assessing Cabanayan's medical evidence, we vacate the Board's decision and remand for reconsideration under the correct legal standard. See Vanieken-Ryals, 508 F.3d at 1036. On remand, the Board should apply the standard detailed in our recent decision in Reilly II. Specifically, the Board must consider all competent medical evidence, including post-retirement medical evidence, and may not reject such evidence solely because it is based on post-retirement examinations or observations. Reilly II, 571 F.3d at 1381-82. Of course, as we recognized in Reilly II, such post-retirement medical evidence may be irrelevant or entitled to little weight based on the factual circumstances, "such as where the later medical condition is attributable to some incident that occurred after the period in question, or where there is a substantial lapse of time and a lack of evidence connecting the prior condition to the more recent medical evidence." Id. at 1382. Based on this standard, the Board must, in the first instance, consider the relevance and probative value of the proffered medical evidence.