# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### 2015 MSPB 18

Docket No. AT-0752-13-0538-I-1

**Ronald G. Bowman,**

**Appellant,**

**v.**

**Small Business Administration,**

**Agency.**

February 23, 2015

Ronald G. Bowman, McDonough, Georgia, pro se.

Krista Madison, Esquire, Atlanta, Georgia, for the agency

Stacye Harness, Esquire, Fort Worth, Texas, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Member Robbins issuing separate dissenting opinion.

## OPINION AND ORDER

¶1 The agency petitioned for review of an initial decision that mitigated its removal action to a 30-day suspension without pay. For the reasons discussed below, we DENY the agency's petition for review and AFFIRM the initial decision.

## BACKGROUND

¶2 The agency removed the appellant from his Supervisory Construction Analyst position based on charges of excessive unauthorized leave and failure to

follow proper leave requesting procedures.[1]   Initial Appeal File (IAF), Tab 6, Subtabs 4b-4c, 4h.   Specifically, the agency charged that the appellant was absent without authorization on December 5, 7, and 10-14, 2012, and did not follow procedures for requesting leave.  *Id*., Subtab 4c at 1-2, Subtab 4h at 2-3.

¶3        The appellant last reported for duty on December 3, 2012.  IAF, Tab 6, Subtab 4h at 1.   On December 6, the appellant telephoned the Deputy Center Director (Deputy) of his work unit about a work-related matter and told the Deputy that he was going to the dentist and would probably be in the next day. HT at 97, 106, 118 (testimony of the Deputy).   The Deputy noted that the appellant had been absent from work and had not been calling in and reminded him of his responsibility to request leave from his supervisor.  *Id.* at 105-06.  The agency had no further contact with the appellant until Sunday, December 16, when the Deputy received a call from the appellant's niece, who informed the Deputy that the appellant had been hospitalized.  HT at 118-19 (testimony of the Deputy).[2]  The Deputy informed the appellant's niece that medical documentation would be required and that a Human Resources representative would contact the niece concerning the appellant's absence.  HT at 119 (testimony of the Deputy). On December 19, a Human Resources Specialist wrote a letter to the appellant acknowledging the December 16 notification that he was unable to work, and

---

[1]  In the proposal notice, the agency identified the appellant's position as a Loss Verification Supervisor, but in the decision notice the agency identified the position as a Supervisory Construction Analyst.  *Compare* Initial Appeal File (IAF), Tab 6, Subtab 4h, *with* IAF, Tab 6, Subtab 4c.  Neither party raises the identification of the appellant's position as an issue in this appeal and we discern no reason to discuss it further.  The appellant's duties included supervising personnel involved in disaster management in 28 states and coordinating activities with the Federal Emergency Management Agency or state or local officials.  *See* Hearing Transcript (HT) at 10 (testimony of the appellant).

[2]  In her testimony, the Deputy related that this call was received on January 15, 2013, but it is clear from the record that the call was in fact received on December 16, 2012. *See* IAF, Tab 6, Subtabs 4h, 4j.

forwarding a leave request form and information regarding the appellant's possible entitlement to leave under the Family Medical Leave Act (FMLA). IAF, Tab 6, Subtab 4j. The December 19 letter advised the appellant that provisional approval was granted for his absences beginning December 17, but that a final determination concerning his FMLA eligibility would be made following his submission of medical documentation. *Id.* It also advised the appellant that he had been placed in an absence without approved leave (AWOL) status on December 5, 7, and 10-14, 2012, but that his AWOL status could be converted to sick leave or leave without pay if he provided acceptable medical documentation. *Id.* On January 15, 2013, there was an exchange of emails between the appellant and the Deputy in which the appellant stated that he was still undergoing therapy and would be sending the requested medical documentation. IAF, Tab 6, Subtab 4i.[3]

¶4     The agency proposed the appellant's removal on February 12, 2013. IAF, Tab 6, Subtab 4h. On February 19, 2013, the appellant submitted the FMLA paperwork requested by the agency on December 19, 2012, which indicated that he had been diagnosed with Major Depressive Disorder, which required his hospitalization from December 15, 2012, to January 9, 2013, and which would incapacitate him through March 8, 2013. *Id.*, Subtab 4f. The doctor's FMLA certification did not address the appellant's medical condition on any of the dates in December 2012 identified as a basis for the agency's removal action (December 5, 7, and 10-14). *See id.* On February 27, 2013, the appellant submitted his response to the proposed removal, which consisted of a single

---

[3] There are apparent indications in the record that, on February 4, 2013, the appellant provided documentation that he was hospitalized from December 16, 2012, through January 9, 2013, and that he was admitted to an outpatient treatment program and would not be able to return to work until the program was completed on February 21, 2013. *See* IAF, Tab 6, Subtab 4h at 2 (proposal letter); HT at 117 (testimony of the Deputy). The record, however, does not actually contain any such medical documentation.

paragraph that did not discuss his medical condition. *Id.*, Subtab 4e. The agency's deciding official issued a decision removing the appellant effective April 12, 2013. IAF, Tab 6, Subtab 4c.

¶5 The appellant subsequently filed the instant appeal. IAF, Tab 1. During the hearing, the appellant testified that he was suffering from mental illness on the days he was charged with unauthorized absences. HT at 60-62, 180. He said he began drinking on or about December 6, 2012, and that he was suffering from the recent death of his son and dreading the thought of the upcoming Christmas holiday. *Id.* at 41-44. He testified that he was suffering from mental illness at the time of his unauthorized absences and that is why he did not call his supervisor. *See id.* at 41-42, 52, 60-61.

¶6 The administrative judge found that the agency proved its two charges and that a nexus existed between the sustained misconduct and the efficiency of the service. IAF, Tab 30, Initial Decision (ID) at 4-5. The administrative judge also determined that mental impairment, when present, warrants consideration in assessing the reasonableness of a penalty, that evidence that an employee's medical condition or mental impairment played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor, and that, even when the mental impairment does not rise to the level of a disability, the condition may be considered in mitigating the penalty. ID at 5-6 (citing *Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1357 (Fed. Cir. 2009); *Woebcke v. Department of Homeland Security*, 114 M.S.P.R. 100, ¶ 15 (2010); *Roseman v. Department of the Treasury*, 76 M.S.P.R. 334, 345 (1997)). The administrative judge concluded that the appellant's mental impairment played a part in the charged misconduct and therefore was entitled to considerable weight as a mitigating factor. ID at 6. She further found that the appellant's mental condition must be considered in mitigating the penalty because the agency knew about it before it removed him. ID at 6. The administrative judge observed that, while the appellant did not specifically tell the agency that he was suffering from

a mental impairment during the charged unauthorized absences, the deciding official testified that he did consider the appellant's FMLA documentation. ID at 6-7.

¶7    In its timely-filed petition for review, the agency argues that its decision to remove the appellant should be upheld because the deciding official fully and appropriately considered all the relevant *Douglas* factors based upon all the evidence that was available to him. Petition for Review (PFR) File, Tab 1 at 10-18. The agency also argues that the circumstances in the instant case can be distinguished from those in the cases relied upon by the administrative judge in mitigating the penalty. *Id.* at 14-18. The appellant has filed a timely response and the agency has replied to the response.[4] PFR File, Tabs 3-4.

## ANALYSIS

¶8    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness, giving proper deference to the agency's primary discretion in managing its workforce.[5] *Douglas v. Veterans*

---

[4] In his response, the appellant raised allegations of disability discrimination and described conversations he allegedly had with the deciding official about his mental health. PFR File, Tab 3. We find nothing in the record below, including the pleadings and the appellant's hearing testimony, indicating that the appellant alleged discrimination because of a disability, or raised any conversation that he purportedly had with the deciding official about his mental health. Generally, the Board will not consider evidence or argument submitted for the first time on review absent a showing that it was previously unavailable despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980); 5 C.F.R. § 1201.115(d).

[5] In her initial decision, the administrative judge ordered the agency to afford the appellant interim relief if either party filed a petition for review. ID at 8-9. With its petition for review, the agency includes a certification that it has complied with the interim relief order. PFR File, Tab 1 at 19; *see* 5 C.F.R. § 1201.116(a). The appellant does not contest the agency's provision of interim relief, and thus we need not address this issue further. *See* 5 C.F.R. § 1201.116(b).

*Administration*, [5 M.S.P.R. 280](#), 306 (1981). Among the pertinent *Douglas* factors in this case are the nature and seriousness of the offense and its relation to the appellant's duties, position and responsibilities, his supervisory status, his past disciplinary record, the effect of the offense on the supervisors' confidence in his ability to perform assigned duties, the clarity with which he was on notice of any rules that were violated in committing the offense or had been warned about the conduct in question, his potential for rehabilitation, and mitigating circumstances, including mental impairment and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the appellant and others. *See id.* at 305-06.

<u>The administrative judge correctly considered the appellant's testimony that his Major Depressive Disorder played a part in the unauthorized absences with which he was charged.</u>

¶9        In its petition for review, the agency argues that the deciding official considered all of the evidence regarding the appellant's medical condition available to him and that the administrative judge erroneously considered the evidence regarding the appellant's mental state prior to his hospitalization that was not presented until the appellant's hearing testimony. PFR File, Tab 1 at 14-17. Thus, according to the agency, the Board should defer to the deciding official's penalty determination. *Id*. at 18.

¶10       There is some support in the cases relied on by the administrative judge for the proposition that mitigating factors based on an appellant's medical condition will be considered only if they were made known to the agency before the adverse action was effected. For example, in *Roseman*, 76 M.S.P.R. at 345, the Board stated that evidence that an employee's medical condition or mental impairment played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor. The Board held that, even where the condition does not rise to the level of a disability, "*if the agency knew about it before taking the action at issue*, we may consider the condition in determining

the appropriate penalty." *Id.* (emphasis added). The Board reiterated this statement in *Woebcke*, 114 M.S.P.R. 100, ¶ 15.

¶11 Despite the above-quoted language, any doubt about the relevance of the appellant's testimony regarding the connection between his mental condition and the absences which formed the basis for the charges in this matter was eliminated by our reviewing court in *Norris v. Securities & Exchange Commission*, 675 F.3d 1349 (Fed. Cir. 2012). In that case, the court held that an arbitrator erred by stating that the issue before him was whether the penalty was within tolerable limits of reasonableness "based upon the facts and circumstances *known to [the deciding official]* at the time." *Id.* at 1352, 1357 (emphasis in original). Emphasizing the de novo nature of Board proceedings, the court held that where new evidence supporting mitigation of the penalty is presented to the Board, the evidence must be considered in determining whether the agency's penalty was reasonable. *Id.* at 1355-57. Accordingly, we find that the administrative judge properly considered the appellant's hearing testimony that his depression played a part in his absences prior to his hospitalization on December 15, 2012.

A 30-day suspension is the maximum reasonable penalty.

¶12 Several *Douglas* factors militate toward a significant penalty. The Board has recognized that being AWOL is a serious offense that warrants a severe penalty. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 39 (1998). Similarly, failure to follow agency leave requesting procedures also can be a serious act of misconduct. *See Wilkinson v. Department of the Air Force*, 68 M.S.P.R. 4, 7 (1995). In addition, in August 2011, the agency issued the appellant a "Letter of Leave Requirement" because of his "unsatisfactory attendance record, which reflected a pattern of excessive use of leave." IAF, Tab 6, Subtab 4m. In December 2011, the appellant was suspended without pay for 5 days based on a charge of failure to comply with the agency's procedures for requesting approved

leave, circumstances very similar to the misconduct in this case.[6] *Id.*, Subtab 4*l*. Also of significance to the penalty determination is the appellant's status as a supervisor because supervisors are held to a higher standard of conduct. *Hill v. Department of the Army*, [120 M.S.P.R. 340](#), ¶ 15 (2013).

¶13    Balanced against these considerations is that, as recognized by the administrative judge, evidence that an employee's medical condition or mental impairment played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor. *See Malloy*, 578 F.3d at 1357; *Woebcke*, [114 M.S.P.R. 100](#), ¶ 15; *Roseman*, 76 M.S.P.R. at 345. The appellant's testimony on this issue, discussed above, is supported by the medical reports. *See* IAF, Tab 6, Subtab 4f. Although none of the medical reports expressly discusses the appellant's condition during the period of the charged absences, the proximity in time supports an inference that he was suffering from Major Depressive Disorder on the dates in question.[7] As the U.S. Court of Appeals for the Federal

---

[6] In that previous action there also had been an absence without leave charge, but that charge was not sustained because, more than 2 months after the proposal notice was issued, the appellant submitted medical documentation supporting a grant of leave. IAF, Tab 6, Subtab 4*l*.

[7] The Member states in his dissent that he would conclude that the penalty of removal did not exceed the bounds of reasonableness even if the appellant's mental condition played a part in his absences. Dissenting Opinion, ¶ 2. He emphasizes that, when the appellant responded to the agency's proposal notice, he neither explained why he was absent nor expressed any remorse for his actions. *Id.* As the administrative judge recognized, however, the deficiencies in the appellant's response must be viewed in light of the fact that the agency proposed to remove him during the time that his physicians had certified that he was incapacitated. ID at 7 n.6. Moreover, although the appellant did not expressly state that he was suffering from a mental impairment on the dates immediately preceding his hospitalization, the agency was aware of the appellant's position that his absences were attributable to the Major Depressive Disorder for which he was hospitalized. Thus, as the administrative judge recognized, the deciding official testified that he did consider the appellant's FMLA documentation in sustaining 7 out of the 9 days in the proposal notice. ID at 7. Further, as stated above, it is undisputed that the appellant's niece contacted the agency to inform it that he had been hospitalized and that on January 15, 2013, he emailed his supervisor

Circuit observed in *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381 (Fed. Cir. 2009), "[t]he field of forensic medicine abounds with examples of subsequent medical documentation relevant to a prior condition. As a classic example, inferences about prior intoxication can be drawn from blood alcohol tests conducted at a later time." *Id.* Other courts have reached the same conclusion in analogous contexts. *See Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (finding in the context of a case involving Social Security disability benefits that "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement . . . was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date") (internal quotation omitted); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (recognizing that "noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant" in the context of Social Security disability benefits); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (noting that "[i]t is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis"); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) (finding that "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status"); *Beckham v. United States*, 392 F.2d 619, 625 (Ct. Cl. 1968) (determining that "we must look to manifestations of the disease or ailment appearing both before and after the point in time of separation" to determine fitness at the time of separation).[8]

informing her that he was in therapy and that he would send a letter from his doctor requesting leave. ID at 7.

[8] Other than decisions of the Federal Circuit, the decisions of the circuit courts are not binding on the Board, but the Board may follow such decisions if it is persuaded by

¶14    Where, as here, proximity in time, testimony, or other evidence provides the requisite link to the relevant period, the subsequent medical evidence can be very probative of a prior medical condition. *See Reilly*, 571 F.3d at 1382. Here, the medical evidence in the record corroborates the appellant's testimony that his mental illness played a significant part in his absence. *See Allen v. Department of the Army*, 76 M.S.P.R. 564, 568 (1997) (accepting evidence from a clinical psychologist supporting a psychological illness and related absence).

¶15    In sum, the medical evidence and hearing testimony support the administrative judge's determination to mitigate the removal penalty. Given the mitigating circumstances in this case, plus the appellant's more than 20 years of successful service, we find that a 30-day suspension is the maximum reasonable penalty.

## ORDER

¶16    We ORDER the agency to cancel the removal and substitute in its place a 30-day suspension without pay. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶17    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the

---

their reasoning. *See Fairall v. Veterans Administration*, 33 M.S.P.R. 33, 39, *aff'd*, 844 F.2d 775 (Fed. Cir. 1987). The decisions of the former U.S. Court of Claims have been adopted by the Federal Circuit as binding precedent until such time as the latter, sitting en banc, overrules such precedent. *South Corporation v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982).

Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶18 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶19 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶20 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶21 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

<u>NOTICE TO THE APPELLANT</u>
<u>REGARDING YOUR RIGHT TO REQUEST</u>
<u>ATTORNEY FEES AND COSTS</u>

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

<u>NOTICE TO THE APPELLANT REGARDING</u>
<u>YOUR FURTHER REVIEW RIGHTS</u>

You have the right to request further review of this final decision.

<u>Discrimination Claims: Administrative Review</u>

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

<u>DISSENTING OPINION OF MEMBER MARK A. ROBBINS</u>

in

*Ronald G. Bowman v. Small Business Administration*
MSPB Docket No. AT-0752-13-0538-I-1

¶1        I respectfully dissent.  I would conclude (even if I were to credit the appellant's testimony that the Major Depressive Disorder for which he was treated on and after December 15, 2012, played a significant part in the absences on December 5, 7, and 10-14, 2012, and his failure to follow leave requesting procedures), that the removal penalty did not exceed the bounds of reasonableness.  This is true despite the appellant's over 20 years of service.  IAF, Tab 6, Subtab 4b.

¶2        The appellant did not provide any medical evidence to support any of his absences at issue in his removal.  When he responded to the proposed removal, he did not explain why he had been absent or why he had failed to comply with the agency's leave requesting procedures.  Nor did he express any remorse for his actions.  In addition, the appellant's work and disciplinary record reflect that he has a demonstrated problem complying with the agency's leave and attendance policies.  In August 2011, the agency issued the appellant a "Letter of Leave Requirement" because of his "unsatisfactory attendance record, which reflected a pattern of excessive use of leave."  IAF, Tab 6, Subtab 4m.  In December 2011, the appellant was suspended without pay for 5 days based on a charge of failure to comply with the agency's procedures for requesting approved leave, circumstances very similar to the misconduct in this case.[*]  *Id.*, Subtab 4*l*.  Also of significance to the penalty determination is the appellant's status as a

_____

[*] In that previous action there also had been an absence without leave charge, but that charge was not sustained because, more than 2 months after the proposal notice was issued, the appellant submitted medical documentation supporting a grant of leave.  IAF, Tab 6, Subtab 4*l*.

supervisor because supervisors are held to a higher standard of conduct. *Hill v. Department of the Army*, 120 M.S.P.R. 340, ¶ 15 (2013).

¶3    Furthermore, the deciding official testified that the appellant's lengthy absence adversely affected the agency's ability to accomplish its mission. *See* HT at 132-34, 140-41, 149-50. The deciding official testified, moreover, that it was the repeated nature of the appellant's misconduct that "sealed it for [him]" and caused him to question the appellant's potential for rehabilitation and the adequacy of a lesser punishment to correct the problem. HT at 141-43. He also cited the appellant's lack of remorse as a significant factor. *Id.* at 154.

¶4    The Board has recognized that being absent without leave is a serious offense that warrants a severe penalty. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 39 (1998). Similarly, failure to follow leave requesting procedures also can be a serious act of misconduct. *See Wilkinson v. Department of the Air Force*, 68 M.S.P.R. 4, 7 (1995).

¶5    Based on the above considerations, I would conclude that the agency's removal penalty is within the bounds of reasonableness and must therefore be affirmed.


_____
Mark A. Robbins
Member